# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **VARIAN SCOTT,** | : | **CIVIL ACTION NO.** |
| **Movant,** | : | **1:11-CV-874-CAP-AJB** |
| | : | |
| **v.** | : | **CRIMINAL ACTION NO.** |
| | : | **1:08-CR-495-CAP-AJB-2** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **MOTION TO VACATE** |
| **Respondent.** | : | **28 U.S.C. § 2255** |

## ORDER FOR SERVICE OF
## <u>REPORT AND RECOMMENDATION</u>

Attached is the Report and Recommendation of the United States Magistrate

Judge made in accordance with 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b) and

N.D. Ga. R. 72.1(C).  Let the same be filed and a copy, together with a copy of this

Order, be served upon counsel for the parties or, if a party is not represented, upon that

party directly.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any,

to the Report and Recommendation within **fourteen (14) days** of service of this Order.

Should objections be filed, they shall specify with particularity the alleged error(s)

made (including reference by page number to any transcripts if applicable) and shall be

served upon the opposing party.  The party filing objections will be responsible for

obtaining and filing the transcript of any evidentiary hearing for review by the District

AO 72A
(Rev.8/8
2)

Court. If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this ____17th____ day of __October__, 2011.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **VARIAN SCOTT,** | : | **CIVIL ACTION NO.** |
| **Movant,** | : | **1:11-CV-874-CAP-AJB** |
| | : | |
| **v.** | : | **CRIMINAL ACTION NO.** |
| | : | **1:08-CR-495-CAP-AJB-2** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **MOTION TO VACATE** |
| **Respondent.** | : | **28 U.S.C. § 2255** |

## UNITED STATES MAGISTRATE JUDGE'S
## ORDER AND FINAL REPORT AND RECOMMENDATION

Movant's motion to vacate sentence under 28 U.S.C. § 2255 is pending before the Court. [Doc. 158.][1] Movant, *pro se*, challenges his convictions and sentence in this Court for conspiracy and health care fraud. Respondent has filed a response opposing the motion, [Doc. 160], and Movant has filed a reply, [Doc. 162]. Respondent also filed a motion for leave to file excess pages in its response, [Doc. 161], and Movant filed a motion to amend his reply, [Doc. 163]. The Court **GRANTS** those procedural motions *nunc pro tunc*. For the reasons discussed below, the undersigned **RECOMMENDS** that the Court deny the § 2255 motion and deny Movant a certificate of appealability.

---

[1]     Unless otherwise indicated, all citations to the record in this Report and Recommendation refer to criminal action number 1:08-CR-495-CAP-AJB.

## I.    Background

In October 2009, a jury in this Court convicted Movant of one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, and twenty counts of health care fraud, in violation of 18 U.S.C. § 1347. [Doc. 105.] Attorney Nicole Kaplan represented Movant throughout the case, including on appeal.

The conspiracy involved Movant, his cousin Hezron Collie, Publix pharmacist Wendell Shoemaker, Kroger pharmacy technician Theresa Bradley, and others. Movant and Collie obtained medical prescription pads from the health care facility at which Collie worked, prepared fraudulent prescriptions for expensive drugs, presented those prescriptions to several Atlanta-area pharmacies to obtain the drugs, and then sold the drugs for profit in Florida. They did not pay for the drugs because they used the identities of Georgia Medicaid patients on the fraudulent prescriptions without those patients' knowledge. The pharmacies billed Georgia Medicaid over one million dollars for the drugs dispensed pursuant to the prescriptions. The conspirators, including Movant, testified at trial, along with physicians, pharmacy employees, Georgia Medicaid officials, law enforcement agents, and others.

Collie testified that while he was in jail awaiting trial for his role in the conspiracy, Movant pressured him into writing a false affidavit, in which Collie stated

2

that Movant was not involved in the crime.  [Trial Transcript ("Trial Tr.") at 244-47.][2]

Collie testified that Movant drafted the language for the affidavit and persuaded Collie

to re-write it in his own handwriting.  [*Id.* at 247-55.]  Collie and Movant discussed the

affidavit at church in the jail.  [*Id.*]  Collie further testified that Movant gave him a

cover letter, addressed to Movant's lawyer, to accompany the affidavit, sent the jail's

chaplain to Collie's cell to notarize the affidavit, and sent a jail officer to Collie's cell

to make copies of the notarized affidavit.  [*Id.* at 256-62.]  Collie told the chaplain that

he signed the affidavit of his own free will.  [*Id.* at 261.]  The affidavit and cover letter

drafted by Movant, as well as the notarized affidavit written by Collie, were admitted

as evidence at trial.  [*Id.* at 247-62.]  Before trial, Movant filed the notarized affidavit

with the Court in support of *pro se* motions to dismiss the indictment.  [Docs. 56, 60.]

Movant's defense at trial was that he was not involved in the health care fraud.

He did not dispute that Collie and others committed health care fraud with fraudulent

drug prescriptions, but denied any personal knowledge or involvement.  In addition to

the co-conspirators' testimony implicating Movant, a fingerprint expert testified that

Movant's fingerprints were found on four fraudulent prescriptions and a pharmacy

patient information card for one of the Georgia Medicaid patients in whose name

---

[2]     The transcript of the trial is in the record at docket entries 133 - 136.

3

fraudulent prescriptions were submitted.  [Trial Tr. at 549-71.]

At Movant's sentencing, the Court applied enhancements under the U.S. Sentencing Guidelines (the "Guidelines") for fraudulent use of five or more means of identification, obstruction of justice, and aggravating role in the offense.  [Doc. 137 ("Sent. Tr.").]  After reviewing the Guidelines and the sentencing factors set out in 18 U.S.C. § 3553(a), the Court sentenced Movant to ten years in prison for the conspiracy conviction and to concurrent two-year prison terms for each of the healthcare fraud convictions.  [*Id.* at 33-37; Doc. 116.]  The Court ordered that the two-year sentence for the healthcare fraud convictions run consecutively to the ten-year sentence for the conspiracy, for a total prison sentence of twelve years.  [Doc. 116.]  The Court also imposed three years' supervised release, a special assessment, and over $1.1 million in restitution.  [*Id.*]  The Court noted that even if the advisory Guidelines range had been lower, e.g., if the Court had not applied some or all of the enhancements, "the Court would still expect to impose a sentence of about 12 years" and that given "the extensiveness of the offense, frankly, a 14-year sentence [the top of the advisory Guidelines range] is probably on the light side."  [Sent. Tr. at 38.]  Movant's convictions and sentence were affirmed on appeal.  *United States v. Scott*, 403 Fed. Appx. 392 (11th Cir. Nov. 16, 2010).

4

In his § 2255 motion, Movant asserts that Kaplan rendered constitutionally ineffective assistance at trial, sentencing, and on appeal.  Specifically, he claims in seven grounds for relief that Kaplan failed to:

1.   vigorously cross-examine and object to the credibility of three government witnesses – Collie, Shoemaker, and Bradley – and request that the Court strike those witnesses' testimony;

2.   move for a judgment of acquittal under Federal Rule of Criminal Procedure 29 and move for a new trial under Rule 33;

3.   raise valid issues regarding Movant's sentence enhancements at sentencing and on appeal;

4.   object to Respondent's use of prisoner Anthony Tobin's hearsay testimony at trial;

5.   call the jail chaplain as a witness at trial;

6.   advise Movant of a possible guilty plea offer; and

7.   argue at sentencing and on appeal for grouping under the Guidelines of all counts of Movant's convictions.

[Doc. 158 at 1-40.]  In his seventh ground for relief, Movant also contends that the Court violated his constitutional rights by imposing a sentence beyond the statutory maximum for his convictions.  [*Id.* at 31-32, 39-40.]

## II.   The Applicable Legal Standards

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the

5

sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  A sentence is subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice. *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant.  *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984).  As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). To establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that his lawyer took.  *Id.* at 1315.

6

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Id.* at 697.

## III.   Analysis

An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Fontaine v. United States*, 411 U.S. 213, 215 (1973). As discussed below, the record in this case conclusively demonstrates that Movant's claims lack merit and that he is not entitled to relief under § 2255.

### A.   Ground One

Movant contends that Kaplan did not properly cross-examine Collie, Shoemaker, and Bradley at trial. He contends that those witnesses perjured themselves and that Kaplan should have moved to strike their testimony.

As for Collie, Movant complains about the following exchange during

7

Respondent's re-direct examination of him at trial:

Q. Mr. Collie, do you recall meeting with me and other people in preparation for trial a couple of weeks ago at my office, the U.S. Attorney's Office?

A. Yes.

Q. And do you recall your lawyer, Bill Morrison, being there?

A. Yes.

Q. Do you remember Agent Strosser and Agent Kelly being there?

A. Yes.

Q. Do you remember telling us in that interview that during the September, 2005, to April, 2006, time frame, you brought in about a hundred to a hundred and ten prescriptions that were part of that scheme?

A. Yes.

Q. And do you remember telling us that your cousin, the defendant, Varian Scott, brought in --

MS. KAPLAN: Objection, Your Honor, leading.

THE COURT: Sustained.

Q. Do you remember telling us how many your cousin, Varian Scott, brought in?

A. Yes.

Q. How many?

8

A. You are talking about two thousand and --

Q. 2005 through April, 2006.

A. Maybe five or six.

Q. You don't recall telling the government that he brought in fifty or sixty?

A. I don't remember.

Q. Do you recall telling the government that your cousin --

MS. KAPLAN: Objection, Your Honor. He is impeaching his own witness?

MR. CHAIKEN [Prosecutor]: We are, Your Honor.

THE COURT: Okay.

[Trial Tr. at 278-79.]  Respondent obviously was hoping that Collie would testify that Movant was personally involved with fifty to sixty fraudulent prescriptions during the 2005 and 2006 time period.  When Collie stated that Movant was involved with only five or six prescriptions during that time period, Respondent attempted to impeach him with his pre-trial statement to Respondent.  Movant argues that the reference to Collie's prior statement was inadmissible hearsay and was false and that Kaplan should have moved to strike the testimony and for a mistrial.

Kaplan's performance regarding Collie's testimony was not objectively

9

unreasonable, and Movant was not prejudiced by the exchange quoted above.  Kaplan did not need to impeach Collie regarding his pre-trial statement about the number of prescriptions Movant personally delivered to pharmacies because Collie testified that the number was only five or six and that he did not remember telling Respondent the number was higher.  That testimony was favorable to Movant.  Respondent had the right to impeach Collie, its witness, but was unsuccessful in doing so.  *See* Fed. R. Evid. 607.  Kaplan highlighted Respondent's failed impeachment attempt in her closing arguments when she portrayed Collie as a liar whose testimony was not credible.  [Trial Tr. at 707.]  There was no basis for a mistrial regarding Collie's testimony quoted above or to strike that testimony, and Movant has presented no authority to the contrary.

Kaplan thoroughly and effectively cross-examined Collie.  For example, Collie admitted on cross-examination that he told the government two weeks before trial that he could not recognize Movant's handwriting, which is contrary to his trial testimony that he knew Movant wrote some of the prescriptions simply by looking at the prescriptions.  [Trial Tr. at 303.]  Kaplan exposed other inconsistencies in Collie's testimony and his pre-trial statements, e.g., inconsistencies regarding his feelings toward Movant after his arrest and his statement to relatives in 2006 that he got

10

prescriptions from someone other than Movant.  [*Id.* at 306-10.]  As for Collie's false affidavit exonerating Movant, Collie admitted on cross-examination that he never told his lawyer, the chaplain at the jail, or the guard at the jail that Movant asked him to do something he did not want to do.  [*Id.* at 311-16.]  Movant has not shown that Kaplan was deficient with regard to Collie's trial testimony.

As for Shoemaker, Movant argues that Kaplan should have impeached him by presenting surveillance videotapes from the Publix store where he worked to contradict his testimony that Movant personally brought some fraudulent prescriptions into the store and sometimes paid him cash while they walked in the store.  Movant contends that there were three videotapes and that he was not shown on any of them.  No videotapes from the store were admitted at trial.

It was not objectively unreasonable for Kaplan not to offer the purported videotapes at trial because they would have had little to no impeachment value. Shoemaker did not testify precisely where he and Movant were located inside the store on the occasions when Movant came to the store.  [*Id.* at 445-513.]  Nor did he testify that surveillance video captured any of their meetings.  [*Id.*]  He stated, on cross-examination, only that the store had surveillance cameras.  [*Id.* at 505-06.] Movant was not prejudiced by Kaplan not presenting the three videotapes because there is no

11

evidence that those tapes covered all the dates on which Shoemaker testified that Movant came into the store and, thus, the tapes would not have been probative of whether Movant was in the store on the occasions Shoemaker said he was there. Moreover, Shoemaker implicated Movant as the leader of the conspiracy by describing events other than those where Movant came into the store. For example, Shoemaker testified that Movant met with him at other places to discuss and plan the conspiracy, that they discussed it by phone, and that Movant sent Collie to the store with fraudulent prescriptions and cash payments for Shoemaker. [*Id.* at 459-69.] Movant has not shown that Kaplan was ineffective for not presenting the three videotapes at trial or that there was any basis to strike Shoemaker's testimony.

Finally, Movant contends that Kaplan should have impeached Bradley as to her prior inconsistent statements to law enforcement about whether she knew Movant. Like Collie and Shoemaker, Movant contends that Bradley perjured herself at trial and that Kaplan should have moved to strike her testimony. Movant's arguments regarding Bradley's testimony are confusing, as he has not identified an inconsistency between Bradley's trial testimony and her pre-trial statements to law enforcement.

Bradley admitted on direct examination by Respondent that when law enforcement interviewed her in 2007 about the prescription drug scheme in which she

12

was involved, she initially lied to them and told them that she did not know Movant and Collie, even after they showed her photographs of them. [*Id.* at 363, 366.] After agents showed her evidence implicating her, Bradley told them the truth. [*Id.* at 364.] On cross-examination, Bradley testified that a law enforcement agent first approached her in 2006 and showed her photos of Collie and others and that she lied to the agent at that time. [*Id.* at 366.] Movant suggests that the agents' written statements of their interviews with Bradley contradict her trial testimony and that Kaplan should have presented those statements at trial, but he does not identify the purported inconsistency. Kaplan competently cross-examined Bradley, and Bradley admitted at trial that she had lied to law enforcement on two occasions during the investigation of the drug prescription fraud. Movant's conclusory and confusing arguments about Bradley's testimony fall far short of establishing ineffective assistance of counsel. Movant is not entitled to relief on ground one of his § 2255 motion.

B.    Ground Two

Movant contends that, given the perjured testimony by the witnesses discussed above, there was insufficient evidence to convict him. Thus, he argues that Kaplan should have moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 and for a new trial under Rule 33.

13

Kaplan moved for a judgment of acquittal under Rule 29 at the close of Respondent's case-in-chief, and the Court denied the motion.  [Trial Tr. at 607-08.] Kaplan argued that there was insufficient evidence to convict Movant because "[t]he only non snitch testimony that we have from anybody who's been remotely reliable is the fingerprint expert."  [*Id.* at 608.]  After trial, but before sentencing, Kaplan filed a preliminary motion for new trial under Rule 33.  [Doc. 111].  Movant has not shown that Kaplan did not render effective assistance of counsel in arguing the Rule 29 motion or by deciding to appeal rather than perfect the motion for new trial.

Movant obviously disagrees with the testimony of his co-conspirators and other witnesses Respondent presented at trial, as evidenced by his own testimony at trial that those people were liars.  His legal argument related to the other witnesses' testimony essentially is that because Kaplan impeached many of Respondent's witnesses, as discussed in Part III.A above, those witnesses' testimony should have been struck in its entirety, thus leaving no basis upon which to convict him.

Impeachment of a witness' credibility through effective cross-examination does not mandate exclusion of the witness' testimony, but instead presents a classic factual issue that the jury must resolve.  Movant presented to the jury his theory of the case, through his own testimony and Kaplan's competent cross-examination of Respondent's

14

witnesses.  Movant's defense conflicted with Respondent's evidence – Movant claimed he was not involved in the crimes while Respondent's witnesses said he was.  It was for the jury to decide who to believe, and to what extent.  *See United States v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir. 1985) (holding that trial courts cannot re-weigh evidence or override a jury's verdict because they disagree with it, but can disturb the verdict only in the exceptional case where the evidence is so against the verdict that a serious miscarriage of justice may have occurred).  There was ample evidence of Movant's guilt beyond the isolated testimony he challenges in his § 2255 motion, including forensic evidence (his fingerprints on the fraudulent documents) and testimony from witnesses who were not part of the conspiracy that implicated him.

Movant has shown no legal basis for excluding certain witnesses' testimony, for a judgment of acquittal, or for a new trial and, thus, has not shown that Kaplan was ineffective in not doing more to seek those things.  He is not entitled to relief on ground two of his § 2255 motion.

C.    Ground Three

Movant objected to three sentence enhancements Respondent sought under the Guidelines, and Kaplan argued those objections at sentencing.  The Court overruled the objections and applied the enhancements.  Movant contends that Kaplan should have

15

raised those issues on appeal and should have objected to the loss amount at sentencing and on appeal.

Movant has not shown that Kaplan was ineffective at sentencing or by not challenging the sentence enhancements and loss amount on appeal. Kaplan competently argued the issues underlying the enhancements and presented the relevant law. Movant has presented no legal authority on the enhancements that casts doubt on their applicability or Kaplan's arguments against them.

Movant suggests that Kaplan should have raised the obstruction of justice enhancement on appeal because it was based on Collie's testimony regarding the false affidavit and Respondent impeached Collie. As discussed in Part III.A, however, Respondent did not successfully impeach Collie, and the matter on which it attempted to impeach him had nothing to do with the false affidavit.

As for the aggravating role enhancement, ample evidence was presented at trial that the conspiracy involved five or more participants and that it was extensive. *See* U.S. Sentencing Guidelines Manual § 3B1.1 (2008) (requiring five or more participants in the criminal activity *or* that it be "otherwise extensive"). Movant did not have to be "the sole leader or kingpin of the conspiracy," did not have to lead or manage *all* the participants of the conspiracy, and did not have to *lead* any of them. *See United States*

16

*v. Vallejo*, 297 F.3d 1154, 1169 (11th Cir. 2002).  Instead, he only had to organize *or* lead *one* of the other participants.  *See* U.S. Sentencing Guidelines Manual § 3B1.1 (2008); *United States v. Cruz-Natal*, 150 Fed. Appx. 961, 966 (11th Cir. Oct. 11, 2005) (citing *United States v. Yeager*, 331 F.3d 1216, 1226 (11th Cir. 2003)).  Given the ample evidence supporting this enhancement, Movant has not shown that no reasonable lawyer would have failed to raise the issue on appeal.

Movant has identified no evidence or support for his argument that the $1.1 million loss amount in his pre-sentence report was erroneous and, thus, that Kaplan should have objected to it at sentencing and challenged it on appeal.  He suggests that because his fingerprints were found on only four fraudulent prescriptions and one patient information card, he cannot be held responsible for the entire $1.1 million loss sustained from all the prescriptions.  As previously discussed, however, there was substantial evidence that Movant was involved in the full scope of the conspiracy, aside from the fingerprint evidence.  Under the Guidelines, Movant was responsible for the greater of the intended loss or the actual loss, which includes pecuniary harm that he "knew or, under the circumstances, reasonably should have known, was a potential result of the offense."  *See* Appl. N. 3(A), U.S. Sentencing Guidelines Manual § 2B1.1 (2008).  His conclusory arguments in his § 2255 motion

17

provide no evidentiary basis to undermine the conclusion that he was responsible for the entire loss amount under the Guidelines. Thus, he has not shown that it was objectively unreasonable for Kaplan not to raise the issue at sentencing or on appeal.

Even if Movant had shown that Kaplan was deficient, he has not shown prejudice, i.e., that there is a reasonable probability that his sentence or the outcome of his appeal would have been different had Kaplan further pursued the sentence enhancement and loss amount issues. The Court found at sentencing that, apart from the Guidelines, Movant's sentence was appropriate considering the sentencing factors in 18 U.S.C. § 3553(a). Even if the Court had not applied the enhancements Movant challenged, "the Court would still expect to impose a sentence of about 12 years" considering the need for incapacitation, Movant's prior criminal record, the available kinds of sentences, and the need for a sentence reflecting the seriousness of the crimes. [Sent. Tr. at 36-38.] The Eleventh Circuit also found Movant's sentence appropriate considering the § 3553(a) factors. *Scott*, 403 Fed. Appx. at 398-99 ("When all of the § 3553(a) factors are taken into consideration, [Movant's] total sentence of 144 months' imprisonment is substantively reasonable."). Movant is not entitled to relief on ground three of his § 2255 motion.

18

D.    Ground Four

During her cross-examination of Movant at trial, the prosecutor asked him if he had made incriminating statements regarding his involvement in the crimes to Anthony Tobin, his cellmate at the jail. [Trial Tr. at 648-53.]  Movant denied making any of the incriminating statements. [*Id.*] Movant argues that Kaplan should have objected to that questioning because it was hearsay that violated his Sixth Amendment right to confrontation.  It was not unreasonable for Kaplan not to object because there was no legal basis to do so.

Movant's own out-of-court statements, when presented by Respondent via cross-examination or otherwise, are not hearsay.  *See* Fed. R. Evid. 801(d)(1).  Tobin, therefore, could have testified as to what Movant told him in jail.  Tobin did not testify at trial, however, and Respondent never asked Movant what Tobin said.  Respondent's questions to Movant implied that Tobin had told Respondent certain things, but Respondent's questions are not evidence, and no evidence of any out-of-court statement by Tobin was offered at trial.[3]  Thus, there was no hearsay or confrontation clause

---

[3]    In response to Respondent's questions, Movant volunteered statements purportedly made by Tobin, e.g., that when Movant let Tobin read Movant's indictment, Tobin "said, this is a bunch of crap." [Trial Tr. at 650.]  Movant cannot complain of his own unsolicited testimony.

19

issue.

Movant relies on case law regarding the admissibility of a non-testifying co-defendant's out-of-court statements.  [Doc. 163.]  Tobin was not a co-defendant, however, and Respondent offered no evidence of Tobin's out-of-court statements.  *See United States v. Veltmann*, 6 F.3d 1483, 1500 (11th Cir. 1993) ("Only those statements by a non-testifying defendant which directly inculpate a co-defendant give rise to the constitutional violation.").  The only evidence presented at trial regarding Movant's purported statements to Tobin was Movant's testimony that he did not make those statements.   Respondent was entitled to ask Movant whether he made those incriminating statements because Movant testified on direct examination – indeed it was his defense theory – that he had nothing to do with the crimes.  Movant is not entitled to relief on ground four of his § 2255 motion.

E.     Ground Five

Movant contends that Kaplan should have called the jail chaplain to testify in support of Movant's position that Collie truthfully wrote the affidavit exonerating Movant and changed his story only under pressure from Respondent.  Movant says the chaplain, who notarized the affidavit in Collie's presence, would have testified that Collie signed it freely and perhaps that Collie told the chaplain it was truthful.

20

Collie testified at trial, however, that he told the chaplain he wrote and signed the affidavit freely.  [Trial Tr. at 261.]  The chaplain's testimony, according to Movant, would not have contradicted that.  Any other testimony by the chaplain regarding his brief encounter with Collie regarding the affidavit likely would have been hearsay – statements Collie made to the chaplain – as Movant does not contend that the chaplain otherwise had any personal knowledge of the affidavit or its contents.  Thus, Kaplan's decision not to call the chaplain as a witness at trial was not objectively unreasonable. Nor has Movant shown a reasonable probability that the outcome of his trial would have been different had the chaplain testified.  Movant is not entitled to relief on ground five of his § 2255 motion.

F.      Ground Six

Movant contends that Kaplan failed to advise him that Respondent had offered a plea deal for him to serve only three years in prison.  Movant bases this claim on a statement Kaplan made at the sentencing hearing, which he takes out of context, and a statement in an e-mail from Collie to Movant dated March 30, 2011.  At sentencing, Kaplan argued against Respondent's request for a fourteen-year prison term that was based, in part, on Movant's prior criminal conviction in Florida for a similar offense. [Sent. Tr. at 26-33.]  Movant was sentenced to three years in prison for the Florida

21

crime.  [Trial Tr. at 640-41.]  Kaplan stated: "Yes, [Movant] has a record. But to go from a three-year sentence for something the government contends is identical to a fourteen-year sentence is a big jump, and the government has not and cannot explain what is the added benefit . . . ."  [Sent. Tr. at 32.]  It is clear that Kaplan's reference to "a three-year sentence" had nothing to do with a purported plea offer from Respondent, and Movant's contrary contention is disingenuous at best.  Kaplan made no mention of a three-year plea offer from Respondent at sentencing, at trial, or at any other court proceeding in this case.  Respondent states that it never made a three-year plea offer to Movant.  [Doc. 160 at 32.]

The e-mail from Collie that Movant has submitted, [Doc. 162 Ex. A], also is not competent evidence of a plea offer.  Collie states in the e-mail: "[W]hen I spoke to damon forbes at the atlanta city jail (I think he was cooperating too) he told me he heard that they had offered you like 5 or 6 years or something like that."  [*Id.*]  That statement in Collie's e-mail is hearsay within hearsay (Collie is telling Movant something that someone else told Collie), and Movant has provided no context or further explanation for the statement.  More importantly, Movant has not even alleged, much less shown, that Kaplan knew of a purported "5 or 6 year[]" plea deal.  His ineffective assistance claim regarding a purported plea deal is frivolous.  He is not entitled to relief on ground

22

six of his § 2255 motion.

G.    Ground Seven

Movant's claim that the Court erroneously sentenced him beyond the statutory maximum for his crimes lacks merit.  Movant's crimes fall under the "Mail Fraud and Other Fraud Offenses" chapter of the criminal code.  Within that chapter, 18 U.S.C. § 1347 prohibits healthcare fraud and provides a maximum sentence of ten years' imprisonment.  Movant was convicted of twenty counts of healthcare fraud in violation of § 1347 and, thus, was subject to a maximum sentence of 200 years' imprisonment for those convictions.  The Court imposed concurrent two-year sentences for the § 1347 violations.  Title 18 U.S.C. § 1349 prohibits conspiracy to commit healthcare fraud and provides a maximum sentence of ten years' imprisonment.  Movant was convicted of one count of conspiracy to commit healthcare fraud in violation of § 1349 and, thus, was subject to a maximum sentence of ten years' imprisonment for that conviction.  The Court imposed a ten-year sentence for the § 1349 violation.

The maximum total sentence for Movant's twenty-one convictions was 210 years' imprisonment if the sentence for each conviction was imposed consecutively.  If the sentence for the twenty counts of healthcare fraud was imposed concurrently, as the Court did in this case, the maximum total sentence was twenty

23

years' imprisonment.  The Court sentenced Movant to twelve years' imprisonment and, thus, did not exceed the statutory maximum.

Movant has not shown that Kaplan was ineffective for not arguing for grouping of Movant's convictions under § 3D1.2 of the Guidelines because he was not prejudiced by any such error.  As discussed in Part III.C, above, both the District Court and the Eleventh Circuit found that Movant's twelve-year sentence was reasonable considering only the sentencing factors in 18 U.S.C. § 3553(a).  [Sent. Tr. at 36-38]; *Scott*, 403 Fed. Appx. at 398-99.  Thus, even if Kaplan had argued for grouping of all counts under the Guidelines, there is not a reasonable probability that Movant would have received a lesser sentence from the District Court or via appeal.  Movant is not entitled to relief on ground seven of his § 2255 motion.

## IV.   Certificate of Appealability ("COA")

Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved

24

in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v . McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and internal quotations omitted).

A COA is not warranted in this case. The resolution of the grounds for relief in Movant's § 2255 motion is not reasonably debatable among jurists of reason. Accordingly, Movant has not made a substantial showing of the denial of a constitutional right and should be denied a COA.

## V.      Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Movant's motion to vacate sentence, [Doc. 158], be **DENIED** and that Movant be **DENIED** a certificate of appealability. Respondent's motion for excess pages in its response brief, [Doc. 161], and Movant's motion to amend his reply, [Doc. 163], are **GRANTED** *nunc pro tunc*.

The Clerk is **DIRECTED** to terminate the referral to the undersigned.

**IT IS SO ORDERED, RECOMMENDED and DIRECTED**, this 17th day of October, 2011.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

25